IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DELBERT LEE BURKETT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-07-1782 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

On May 30, 2007, petitioner, Delbert Lee Burkett, filed a Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1). Pending before the court are Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 10) and Petitioner's Reply to Respondent's Motion for Summary Judgment with Brief in Support (Docket Entry No. 13). Also before the court are Petitioner's request for leave to file an Addendum to Petitioner's Reply to Respondent's Motion for Summary Judgment (Docket Entry No. 14) and Respondent's Motion to Strike with Brief in Support (Docket Entry No. 15). For the reasons explained below, the court will grant Respondent's Motion for Summary Judgment, but deny his Motion to Strike as moot, deny Petitioner's request for leave to file an Addendum to Petitioner's Reply, and dismiss the petition.

## I.  Factual and Procedural Background

Petitioner was indicted in Montgomery County, Texas, in Cause No. 03402 for indecency with a child.[1]  Petitioner was found guilty by a jury and was sentenced by the trial judge to forty years in prison.[2]

A.P., the twelve-year-old victim, was the only eyewitness to the crime.  At trial she testified that in the late afternoon of August 6, 2002, as she was riding her bicycle to a friend's house, she saw petitioner stop his gray Cadillac in front of her, exit the car, drop his pants and underwear to his ankles, expose his penis, and begin to masturbate.[3]  A.P. testified that approximately fifteen seconds passed from the time she first saw petitioner to the time it took her to ride past him.  In that fifteen seconds, while petitioner masturbated, A.P. testified that she made eye contact with petitioner and saw his face;[4]  she also noticed that petitioner was not wearing a shirt and testified to seeing a black tattoo on petitioner's upper-arm.[5]

---

[1]Ex parte Burkett, WR-67,366-01, Vol. II, Indictment, p. 464.

[2]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 2.

[3]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II pp. 47, 50-55.

[4]Id. at 54.

[5]Id. at 52, 60.

A.P. testified that as she rode past petitioner, he reached out for her and then began to chase her.  As petitioner pursued, A.P. rode her bicycle into a ditch, dropped it, and ran the short distance to her friend's house.[6]  There she found her friend and her friend's mother, Sandy Steede, and told them what had happened. Upon hearing A.P.'s story, Sandy Steede immediately called 911. Sandy Steede also immediately called her husband, Dusty Steede, and gave him the description of the car and the perpetrator according to the description A.P. had given.[7]

Dusty Steede testified that shortly after he received the phone call from Sandy Steede he passed a vehicle matching the description given.  The car was parked at a local store close to where the crime occurred.[8]  Dusty Steede testified that he pulled into the parking lot, obtained the license plate number from the gray Cadillac, and saw petitioner behind the wheel of the Cadillac.[9]

Both A.P. and Dusty Steede identified petitioner as the man they saw on the day in question in a photo array, which was admitted as evidence at trial.[10]  Each photo array was administered

---

[6]Id. at 56-58.

[7]Id. at 58-59, 97-98.

[8]Id. at 104-06, 117.

[9]Id. at 106-08.

[10]Id. at 87-88, 109-10.

separately.[11]  A.P. also identified petitioner in court as the man she saw that day.[12]

Petitioner appealed his conviction to the Texas Court of Appeals,[13] raising five points of error.  The Court of Appeals held that one of petitioner's five points, a claim of prosecutorial misconduct, was procedurally barred because petitioner had failed to perfect his objection at trial; the court denied the other four points on the merits, and affirmed petitioner's conviction.[14] Petitioner then filed a Petition for Discretionary Review with the Texas Court of Criminal Appeals, and a Writ for Certiorari with the United States Supreme Court, both of which were denied.[15]

Petitioner filed an Application for Writ of Habeas Corpus in state court where he raised three main claims:  ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct.[16]  The state habeas trial court issued its Findings of Fact and Conclusions of Law recommending that petitioner's

---

[11]Id. at 131-32.

[12]Id. at 51.

[13]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 3.

[14]Ex parte Burkett, WR-67,366-01, Vol. II, Burkett v. State, 07-03-348-CR, pp. 470-77.

[15]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 3.

[16]Ex parte Burkett, WR-67,366-01, Vol. II, Burkett v. State, 07-03-348-CR, pp. 4-167.

application be denied.[17]   The Texas Court of Criminal Appeals followed that recommendation and denied petitioner's application.[18]

Petitioner filed a federal petition for habeas corpus on May 30, 2007.  In the petition he raised the same claims that he raised in his state application, including those held procedurally barred by the Texas Court of Appeals.[19]  In lieu of an answer, respondent filed his Motion for Summary Judgment with Brief in Support.

## II.   Standards of Review

Respondent contends that he is entitled to a judgment because, based on the state court records, petitioner has failed to meet his burden under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Because petitioner filed his habeas petition after April 24, 1996, the AEDPA applies.  Lindh v. Murphy, 117 S. Ct. 2059 (1997).  Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000); but only to the extent that the rule is consistent with the AEDPA, see Rule 11 of Rules Governing § 2254 Cases.  Under Rule 56 summary

---

[17]Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, pp. 425-63.

[18]Id.

[19]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, pp. 7-8.

-5-

judgment is appropriate only if the pleadings and parties'
submissions demonstrate that there is no genuine dispute regarding
any material fact, and the moving party is entitled to judgment as
a matter of law. Fed. R. Civ. P. 56(c). In habeas cases, however,
the court cannot construe all facts in the light most favorable to
the nonmoving party. See Woods v. Cockrell, 307 F.3d 353, 356-57
(5th Cir. 2002). The AEDPA requires the court to presume as true
all facts found by the state court absent clear and convincing
evidence. Id. (citations omitted); 28 U.S.C. § 2254(e)(1).

Petitioner has the burden of establishing that he is entitled
to relief. Orman v. Cain, 228 F.3d 616, 619 (5th Cir. 2000). To
meet his burden under the AEDPA, petitioner must establish that the
state courts' adjudication of his claims was "contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the
United States[.]" 28 U.S.C. § 2254(d)(1). A state court's
decision is "contrary to" clearly established federal law if the
state court applied a rule that contradicts the law as established
by the Supreme Court, or decides the case differently than the
Supreme Court on a set of facts that are "materially
indistinguishable." Coble v. Quarterman, 496 F.3d 430, 435 (5th
Cir. 2007). An "unreasonable application" means more than an
"erroneous application"; an "unreasonable application" exists only
where "the state court correctly identifie[d] the governing legal

principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of the particular case." Horn v. Quarterman, 508 F.3d 306, 312 (5th Cir. 2007) (internal quotations omitted).   To determine whether petitioner has made this showing, the court must examine petitioner's underlying claims.   See Del Toro v. Quarterman, 498 F.3d 486, 490-91 (5th Cir. 2007) (affirming denial of a petitioner's habeas petition because he could not establish his claim on the merits); Neal v. Puckett, 286 F.3d 230 (5th Cir. 2002) (evaluating the merits of petitioner's claim before concluding that although incorrect, the state court's decision was not an unreasonable application of federal law).   In his petition, petitioner raises three main grounds for relief:   prosecutorial misconduct,   ineffective   assistance   of   counsel,   and   judicial misconduct.   Each claim will be addressed in turn.

### III.   Prosecutorial Misconduct

**A.   Coaching Witnesses**

There is no factual basis for petitioner's claim that the prosecutor coached the testimony of the prosecution's witnesses. As part of petitioner's state habeas application, the prosecutor filed an affidavit, which the state habeas court found was both true and credible.[20]   In that affidavit, the prosecutor stated that while he may have prepared and interviewed witnesses prior to

---

[20]Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 452 ¶ 229.

trial, he never coached their testimony or told them what to say.[21]
Petitioner has not presented any evidence directly contradicting
the prosecutor's statements; petitioner's only argument is that
there is circumstantial evidence in the record indicating that the
prosecutor coached the witnesses.[22] Even if true, this circumstan-
tial evidence neither entitles petitioner to relief nor creates a
genuine issue of fact because the evidence he presents is not
"clear and convincing evidence" as required by 28 U.S.C.
§ 2254(e)(1), and therefore cannot rebut the presumption of
correctness attached to the state habeas court's findings.
Accordingly, the court will deny petitioner's claim.

**B.   Allowing False or Perjured Testimony**

Petitioner's claims that the prosecutor committed misconduct
when the prosecutor allowed A.P., Sandy Steede, Dusty Steede, and
Detective Lewis to offer false or perjured testimony must fail as
a factual matter.  Petitioner cannot prevail on this claim unless
he provides evidence that "the prosecution actually kn[ew] or
believe[d] the testimony to be false or perjured; it is not enough
that the testimony is challenged by another witness or is

---

[21]<u>Id.</u>, Affidavit of Robert Bartlett, Assistant District
Attorney, pp. 420-21 ¶ 15.

[22]One example of the circumstantial evidence petitioner cites
is in Reporter's Record, Docket Entry No. 9, Trial on the Merits,
Vol. II p. 17.  There, the prosecutor explained to the trial court
that Sandy Steede changed her account of what A.P. had said
concerning the Cadillac's color after talking with the prosecutor.

inconsistent with prior statements." <u>Kutzner v. Cockrell</u>, 303 F.3d 333, 337 (5th Cir. 2002).   The state habeas court made specific factual findings that the prosecutor did not know or believe that any of the challenged testimony was false or perjured.[23]   Petitioner has not produced clear and convincing evidence to rebut these findings.   Accordingly, the court will deny this claim.

## C.   Suppressing Exculpatory Evidence

Petitioner contends the prosecutor committed misconduct by suppressing exculpatory evidence.   Under <u>Brady v. Maryland</u>, 83 S. Ct. 1194 (1963), the state has a constitutional obligation to disclose any evidence to the defense that "is material either to guilt or punishment."  83 S. Ct. at 1196-97.   To prevail on a <u>Brady</u> claim, petitioner must establish "that (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, <u>and</u> (4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence." <u>Rector v. Johnson</u>, 120 F.3d 551, 558 (5th Cir. 1997).   The prosecution's duty to disclose under <u>Brady</u> encompasses only exculpatory evidence, including impeachment evidence, in the prosecution's possession.   <u>Id.</u>   <u>Brady</u> does not, however, require the disclosure of potentially exculpatory evidence "when that evidence is either in possession of the defendant or can

---

[23]<u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, pp. 451-52, ¶¶ 215-16, 222, 224, 227.

be discovered by exercising due diligence." <u>Id.</u> at 558-59. Moreover, <u>Brady</u> imposes no duty to disclose evidence that is either neutral or inculpatory. <u>United States v. Nixon</u>, 881 F.2d 1305, 1308 (5th Cir. 1989).

Petitioner alleges several <u>Brady</u> violations, most of which lack merit. Contrary to petitioner's allegations, the prosecution had no constitutional duty to produce a copy or transcript of Sandy Steede's 911 call, to provide petitioner information regarding his own tattoos, or to produce a photograph showing that petitioner wore a moustache the day after the offense.[24] As the state habeas court found, petitioner had access to or knew, or should have known, about such evidence, and could have obtained the evidence through the exercise of due diligence.[25] Thus, as to these items of evidence, petitioner has failed to establish a <u>Brady</u> violation.

---

[24]Petitioner also contends that the prosecutor violated <u>Brady</u> by failing to identify himself as the proper "outcry witness" as defined by state law. <u>See</u> Tex. Code Crim. P. art. 38.072. However, in his discussion of this claim, petitioner does not identify what exculpatory evidence, if any, he would have obtained had the prosecutor identified himself as the outcry witness. Rather, petitioner contends that the prosecutor's failure to identify himself as the outcry witness denied petitioner of his Sixth Amendment right to confrontation. See Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus, Docket Entry No. 2, pp. 65-66. Accordingly, the claim does not state a <u>Brady</u> violation. To the extent that petitioner asserts a violation of the confrontation clause, that claim is denied because petitioner failed to adequately brief that issue. <u>See</u> <u>United States v. Stevens</u>, 487 F.3d 232, 242 n.1 (5th Cir. 2007) ("Inadequately briefed issues are deemed abandoned.").

[25]<u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 456 ¶¶ 20-22.

Moreover, the prosecution did not violate <u>Brady</u> by failing to provide petitioner with a copy of A.P.'s school records.  The state habeas court determined, and the sworn testimony of petitioner's trial counsel confirmed,[26] that A.P.'s school records contained no information favorable to the defense and were not material to petitioner's guilt.[27]  Petitioner has provided no evidence indicating otherwise.

There is, however, some merit to petitioner's final contention that the prosecution had an obligation under <u>Brady</u> to disclose the fact that A.P. had noticed a tattoo on the perpetrator's arm. Respondent does not dispute that this evidence constituted, at the very least, impeachment evidence.  Respondent's only contention on summary judgment is that petitioner's claim must fail because the evidence was not "suppressed" within the meaning of <u>Brady</u> since the evidence was disclosed during trial through A.P.'s testimony. Although the prosecutor may not have "suppressed" the evidence in the sense that he prevented it from being either admitted at trial or disclosed to the defense, a <u>Brady</u> violation may still exist when exculpatory evidence is disclosed for the first time at trial if "the defendant was prejudiced by the tardy disclosure."

---

[26]Reporter's Record, Docket Entry No. 9, Motion for a New Trial pp. 38-39; <u>see also</u> <u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Bartlett Aff., pp. 415-16 ¶ 7 (stating that A.P.'s school records provided no material evidence for petitioner's case).

[27]<u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, pp. 456-57 ¶ 23.

United States v. McKinney, 758 F.2d 1036, 1050 (5th Cir. 1985). However, "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." Id.

Petitioner contends that he was prejudiced by the prosecutor's failure to timely disclose A.P.'s testimony concerning the tattoo because pretrial disclosure of A.P.'s identification of the single tattoo would have alerted him of the need to present or provide evidence of his many tattoos to impeach A.P.'s testimony. The problem with petitioner's argument is that he did provide evidence of his many tattoos at trial: Petitioner's mother testified that petitioner was covered in tattoos "from his waist up to his neck, all down his arms and back."[28] Petitioner has not indicated what more he would have provided had the prosecution given him more notice, or what effect such additional evidence would have had on the trial, if any. Therefore, the court concludes that petitioner has failed to establish that he was prejudiced by the prosecutor's tardy disclosure of this impeachment evidence, and will therefore deny petitioner's Brady claim. Cf. United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983) (holding that when the Brady evidence at issue is limited to impeachment evidence, disclosure on the day of trial will generally satisfy due process).

---

[28]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II p. 148:13-14.

**D.    Improper Jury Argument**

Petitioner argues that he is entitled to habeas relief because the prosecutor argued improperly at several points during his closing argument.  When deciding a claim of prosecutorial misconduct on collateral review, the court does not apply the same broad standard applied on direct review.  Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000).  Instead, the court may grant relief only if the prosecutor's argument was improper and "so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment."  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  Petitioner argues that he was denied due process when, during closing  argument, the prosecutor (1) made personal attacks against petitioner and his counsel, (2) commented on petitioner's silence at trial, and (3) improperly bolstered the credibility of the prosecution's witnesses.

1.    Comments on Petitioner and His Counsel

During closing argument the prosecutor referred to petitioner as a "crook,"[29] and labeled defense counsel's closing argument as "ridiculous."[30]  Although the professional propriety of these comments can be debated, the prosecutor's aspersions were not improper for purposes of a prosecutorial misconduct claim.  "[T]he

---

[29]Id. at 169:21-22.

[30]Id. at 166:5-6.

-13-

use of . . . colorful pejoratives is not improper," so long as the pejorative used is supported by the evidence. <u>United States v. Fields</u>, 483 F.3d 313, 360-61 (5th Cir. 2007) (quoting <u>United States v. Shoff</u>, 151 F.3d 889, 893 (8th Cir. 1998)); <u>see also</u> <u>id.</u> (holding that the prosecutor's reference to the accused as a "psychopath" was not reversible error); <u>Drew v. Collins</u>, 964 F.2d 411, 419 (5th Cir. 1992) (holding that a prosecutor's reference to a habeas petitioner as a "sadistic killer" and "a macho man" was insufficient to warrant habeas relief). Accordingly, petitioner is not entitled to relief based on the prosecutor's reference to petitioner as a "crook," since the appellation was supported by A.P.'s testimony.[31] Moreover, the prosecutor's characterization of defense counsel's argument as "ridiculous" is also insufficient to warrant habeas relief since the prosecutor did not attack defense counsel's integrity or character. <u>See</u> <u>United States v. Mares</u>, 402 F.3d 511, 516 (5th Cir. 2005).

### 2. <u>Comment on Petitioner's Silence at Trial</u>

Petitioner contends that the prosecutor burdened petitioner's Fifth Amendment right against self-incrimination when the

---

[31]Furthermore, the court rejects any contention from petitioner that the prosecutor's reference to petitioner as a "crook" was an attempt to alert the jury to petitioner's prior convictions. The prosecutor made the comment while arguing the facts of the case: that petitioner exposed himself to A.P.; that A.P. ran to her friend's house; and that, fearing he would get caught, petitioner fled the scene "as every little crook would do, or big crook in this case . . . ." <u>Id.</u> at 169:10-24.

prosecutor pointed out the fact that petitioner could have shown the jury his many tattoos, but failed to do so.[32]   The court disagrees.

A prosecutor's comment violates a petitioner's right against self-incrimination if the comment "'was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Rivera v. Collins, 934 F.2d 658, 661 (5th Cir. 1991) (quoting Milton v. Procunier, 744 F.2d 1091, 1095 (5th Cir. 1984)). However, no intent is manifest "when there is another plausible explanation" for the comment.   Id.

Here, the prosecutor's comment concerned nontestimonial evidence, i.e. petitioner's tattoos.   See United States v. Dionisio, 93 S. Ct. 764, 767-68 (1973). Accordingly, by commenting on petitioner's failure to exhibit nontestimonial evidence, the prosecutor did not manifest an intent to comment on petitioner's silence.   The nontestimonial nature of the tattoos also makes it unlikely that a reasonable jury would construe the remark as a

---

[32]The prosecutor argued the following concerning petitioner's failure to show the jury his tattoos:

> [Petitioner's mother] also tells you that he has tattoos all over.  Remember, defense counsel -- I can't prevent him from standing up and taking off his shirt.  Did he do that?  No.

Id. at 171.  This comment drew an objection from defense counsel, which the trial court sustained.   Id. at 171:20-21.

comment on petitioner's silence.  Furthermore, the prosecutor's comment on petitioner's failure to display his tattoos was not a comment on petitioner's silence since a witness other than petitioner could, and did, testify about petitioner's tattoos. Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998).

    3.   <u>Bolstering the Credibility of Prosecution Witnesses</u>

      Petitioner argues that the prosecutor deprived petitioner of a fair trial when the prosecutor bolstered the testimony of the prosecution's witnesses, especially the testimony of A.P., the twelve-year-old victim and sole eyewitness.[33]  After the trial court had issued its charge to the jury, the prosecutor waived opening argument and allowed defense counsel to present his closing argument first.  During his closing argument petitioner's counsel attacked A.P.'s credibility and the credibility of her

---

    [33]The Texas Court of Appeals held this claim was procedurally barred because petitioner's counsel failed to perfect his objection to the prosecutor's argument.  <u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, <u>Burkett v. State</u>, No. 03-05-03402-CR, pp. 474-75. Normally, this holding would constitute an adequate and independent state ground for the dismissal of petitioner's claim of prosecutorial misconduct under the doctrine of procedural default. <u>See</u> <u>McKinney v. Estelle</u>, 657 F.2d 740, 742 (5th Cir. 1981). However, respondent failed to raise this affirmative defense in his Motion for Summary Judgment with Brief in Support; and the court will not raise it for him.  Petitioner has had neither notice that the procedural default might apply to his prosecutorial-misconduct claim nor an opportunity to raise one of the exceptions to the doctrine.  <u>Cf.</u> <u>Prieto v. Quarterman</u>, 456 F.3d 511, 518 (5th Cir. 2006) ("[W]e have never approved of a <u>sua sponte</u> application of the procedural bar defense when the petitioner has absolutely no notice or opportunity to respond.").  Accordingly, the court will address the claim on the merits.

identification of petitioner as the perpetrator.[34]  Counsel pointed out inconsistencies in the witnesses' testimony and argued that the prosecution's witnesses had misidentified petitioner as the perpetrator.  Defense counsel was especially critical of the fact that A.P. had not "told anybody" prior to trial that the perpetrator was masturbating or that the perpetrator had a tattoo on his arm;[35] and suggested that her testimony had been "tainted" and "possibly coached."[36]  He further argued that the prosecution's investigation was flawed and sloppy and that the prosecution had provided A.P. and Dusty Steede with a suggestive photo array.[37]

After a brief introduction, the prosecutor told the jury that "A[.P.'s] testimony is very credible.  More detailed than you get from most adults in the same situation"; that "what [A.P.] told in addition to [her statement to police] was the truth is what I submit to y'all";[38] and that "[A.P.] told the truth."[39]  No objections were made to those statements.  The prosecutor also argued that

---

[34]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II pp. 160-61, 163:15-25, 164.

[35]Id. at 164:18-24.

[36]Id. at 164:15-17.

[37]Id. at 161-63.

[38]Id. at 168:19-24.  The facts "in addition to" what A.P. told investigators are that petitioner was masturbating and had a dark mark or tattoo on his upper-arm.

[39]Id. at 172:11-12.

> [A.P.] . . . was able to testify in addition to the
> original statement about two things.  And she told you
> the truth.  Why?  Because, number one, I went out there
> and I did my job.  I went out there and I talked to her
> at her house.  I went to the scene and took photographs.

At that point, defense counsel objected on the grounds that the prosecutor was inserting himself as a witness; the trial court impliedly sustained the objection by directing the prosecutor to "avoid this area."[40]  No sooner had the court given its direction, however, when the prosecutor returned to the same argument,[41] drawing another objection from petitioner's counsel, which the court again sustained, this time admonishing the prosecutor to argue only what A.P. had testified at trial.[42]  With that admonition, the prosecutor argued what A.P. had testified during trial.[43]  Finally, before urging the jury to convict petitioner, the prosecutor offered this summation:  "What you have here is good police work based on good eyewitness testimony by a brave young woman."[44]  Petitioner argues that each of these statements constitutes improper argument and denied him a fair trial.[45]

---

[40]Id. at 167-68.

[41]The prosecutor managed to argue the following before defense counsel objected a second time:  "I went out and spoke to the young girl, and she told me . . . ."  Id. at 168:4-5.

[42]Id. at 168:6-9.

[43]Id. at 168:10-13.

[44]Id. at 172:19-20.

[45]In a separate claim, petitioner contends that the prosecutor attempted to inflame the jury by arguing that the crime could have
(continued...)

a.   The Propriety of the Prosecutor's Argument

To determine whether the prosecutor's argument was proper the court reviews the argument "in light of the argument to which it responded." United States v. Thomas, 12 F.3d 1350, 1367 (5th Cir. 1994) (internal quotations omitted).[46]   Prosecutors may "present what amounts to be a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [the prosecutor] or his witnesses." United States v. Dorr, 636 F.2d 117, 120 (5th Cir. 1981). However, even when arguing on rebuttal, prosecutors may not "intertwine [their] own personal and official credibility with that of the witnesses[.]"   United States v. Nanez, 694 F.2d 405, 410 (5th Cir. 1982).

While attempting to discredit A.P.'s testimony, petitioner's counsel often went outside of the evidence produced at trial. Petitioner's counsel went outside the record several times while impugning the prosecution's investigation of the case.   Counsel also strayed beyond the evidence produced at trial when he

---

[45](...continued)
been more serious than it was since petitioner tried unsuccessfully to grab A.P.   Id. at 167:12-17.   This claim is denied because petitioner has neither cited authority nor provided any explanation establishing the comment as inflammatory and improper.   Stevens, 487 F.3d at 242 n.1.

[46]Although petitioner's case is not on direct review, the court may look to those decisions to determine the propriety of a prosecutor's argument.   Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).

suggested that A.P.'s testimony had been tainted and coached. Moreover, throughout his argument and trial petitioner's counsel insinuated that A.P. had fabricated the facts that petitioner was masturbating and that she had seen a tattoo on his arm.  When viewed in the proper context, it is apparent that the bulk of the arguments that petitioner objects to were not improper but were offered in "fair reply" to defense counsel's attacks on A.P.'s credibility, and the quality of the prosecution's investigation. United States v. Hiett, 581 F.2d 1199, 1204 (5th Cir. 1978).  More importantly, petitioner has failed to establish that the state court's conclusion that these arguments were proper was an objectively unreasonable decision.[47]

However, the prosecutor's argument that A.P.'s testimony was more detailed than most adults, and was credible because he did his job, was not proper.  While it is not clear whether the state habeas court specifically addressed this portion of the prosecutor's argument in its decision, to the extent that it did, its decision was not reasonable.  Respondent cites Drew v. Collins, 964 F.2d 411 (5th Cir. 1992), as support that the state court's conclusion was reasonable.  There, the Fifth Circuit held that a prosecutor did not argue improperly when he told the jury that he thought one of his witnesses was "trying to do what was right," and

---

[47]See Ex parte Burkett, WR-67,366-01, Findings of Fact and Conclusions of Law, p. 442 ¶ 141.

that another witness was "credible." Id. at 419.  The court
rejected the petitioner's argument that such argument was improper
because "the prosecutor's comments did not bolster the credibility
of the witnesses based solely on the prosecutor's own credibility,"
but were "grounded in evidence presented to the jury." Id.

However, the same cannot be said of the prosecutor's argument
here.  The prosecutor's argument implied to the jury that the
prosecutor knew more about the nature of A.P.'s testimony than what
he had offered into evidence at trial and that A.P.'s testimony was
credible based on his own personal and official credibility.  Thus,
although the prosecutor's argument may have been offered during
rebuttal, it was unreasonable for the state court to conclude that
such comments were within the bounds of a proper rebuttal.

b.   Prejudice

On federal habeas review a prosecutor's improper argument
warrants habeas relief only if the argument violates petitioner's
right to due process.  Jones, 864 F.2d at 356.  A due process
violation is not established by "remarks [that] were undesirable or
even universally condemned[.]" Jackson v. Johnson, 194 F.3d 641,
653 (5th Cir. 1999).  Rather, a violation of due process exists
"only if the prosecutor's remarks evince either persistent and
pronounced misconduct or . . . the evidence of guilt was so
insubstantial that (in probability) but for the remarks no
conviction would have occurred." Harris v. Cockrell, 313 F.3d 238,

-21-

245 (5th Cir. 2002) (internal quotations and citations omitted).
In making this determination the impact of the prosecutor's
argument must be evaluated "in the context of the trial as a whole,
including the prosecutor's entire closing argument."  Jones, 864
F.2d at 359-60.

In this case the prosecutor continued to argue in an improper
manner even after the court sustained the objection of petitioner's
counsel.  Moreover, the fact that the jury was at one point
deadlocked indicates that the jury's verdict may have been
influenced by the prosecutor's improper argument.

However, this court has no authority on habeas review to
independently determine whether petitioner has established
prejudice.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir.
2003).  Under the AEDPA, the only inquiry before the court is
whether the state habeas court's decision -- that petitioner was
not prejudiced by the prosecutor's comments -- was objectively
unreasonable.  28 U.S.C. § 2254(d)(1).  Thus, the court will deny
petitioner's claim because it cannot conclude that the state
court's decision was unreasonable based on an examination of the
trial as a whole.

The evidence against petitioner was substantial, though
perhaps not in quantity.  A.P. testified at trial that she saw
petitioner expose himself and masturbate in front of her.  A.P.'s
identification of petitioner and of petitioner's car was

contemporaneously confirmed by Dusty Steede.  This identification of petitioner as the perpetrator was further strengthened by the fact that both A.P. and Dusty Steede identified petitioner as the person they saw on the day of the crime in separately and independently conducted photo arrays.  Moreover, prior to the prosecutor's argument, the state trial court instructed the jury that the statements and arguments made by the prosecutor were not to be accepted as evidence; that any argument inconsistent with the law must be disregarded; and that the jurors were the exclusive judges of the credibility of the prosecution's witnesses and the quality of the prosecution's evidence.[48]  The state trial court also sustained defense counsel's two objections to the prosecutor's argument and admonished the prosecutor each time, thereby further indicating to the jury that the prosecutor's arguments were not proper and should be ignored.  Accordingly, given the strength of the evidence identifying petitioner as the perpetrator, the trial court's instructions to the jury, and the presumption that jurors follow the court's instructions, see Woods v. Johnson, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996), it was not unreasonable for the state court to conclude that the prosecutor's improper argument did not affect the jury's verdict, and therefore did not deny petitioner a fair trial.

---

[48]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II pp. 156:7-8, 18-21, 157:13-17.

-23-

## IV.   Ineffective Assistance of Counsel

To establish that his counsel was ineffective petitioner "must demonstrate both deficient performance by his counsel and prejudice resulting from that deficiency." Emery v. Johnson, 139 F.3d 191, 196 (5th Cir. 1997).  To prove counsel's performance was deficient "petitioner must demonstrate that [his] counsel's representation fell below an objective standard of reasonableness." Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005) (internal quotations omitted).  When examining counsel's performance, the court "must be highly deferential, and . . . must presume that counsel's conduct falls within the wide range of reasonable professional assistance." Id.  Moreover, the court must "make every effort 'to eliminate the distorting effects of hindsight' and 'to evaluate the conduct from counsel's perspective at the time.'" Martinez v. Quarterman, 481 F.3d 249, 254 (5th Cir. 2007) (quoting Strickland v. Washington, 104 S. Ct. 2052, 2065 (1984)).  To prove prejudice petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068.  In other words, counsel's unprofessional errors must undermine the court's confidence in the outcome of petitioner's trial. Id. A claim for ineffective assistance of counsel can be disposed of "for either reasonable performance of counsel or lack of prejudice, without addressing the other." Murray v. Maggio, 736 F.2d 279, 282 (5th

-24-

Cir. 1984).   Petitioner contends that his trial counsel, his counsel for his motion for a new trial, and his appellate counsel all denied him the effective assistance of counsel.[49]

## A.   Ineffective Assistance of Trial Counsel

Claims of ineffective assistance of trial counsel are legion in petitioner's ninety-page Memorandum in Support of Petition for Writ of Habeas Corpus.   However, the only claims that merit discussion are that counsel was ineffective when he failed to (1) investigate and prepare for trial, (2) preserve petitioner's

---

[49]Although the state habeas court correctly quoted the Strickland prejudice standard, see Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 461 ¶ 57, the state habeas court repeatedly applied the standard incorrectly.   It required petitioner to "prove that the outcome of the trial would have been different had trial [or appellate] counsel [not acted deficiently]." See, e.g., Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, pp. 442 ¶ 143, 444 ¶¶ 158-159, 447 ¶ 184.   This is not the Strickland prejudice standard. Petitioner need not affirmatively prove that but for counsel's deficient conduct the result of the proceeding would have been different; all petitioner must show is a "reasonable probability." Williams v. Taylor, 120 S. Ct. 1495, 1519 (2000).   Thus, by applying Strickland incorrectly the state habeas court's decision as to the prejudice prong of Strickland was "contrary to" clearly established federal law.   See id.; Coble, 496 F.3d at 435.   This does not mean, however, that where the state habeas court rejected petitioner's claims based on lack of prejudice the decision is not entitled to any deference under the AEDPA.   "Even though a state court may apply an incorrect legal standard, a federal habeas court must still determine whether the state court's ultimate conclusion . . . is objectively unreasonable." Moreno v. Dretke, 450 F.3d 158, 168 n.7 (5th Cir. 2006).   Accordingly, despite the state habeas court's erroneous application of the Strickland prejudice test, where appropriate petitioner must still demonstrate that the state habeas trial court's "ultimate conclusion," i.e. that petitioner was not prejudiced by counsel's performance, was objectively unreasonable.

claim of prosecutorial misconduct for appeal, (3) strike a jury member, and (4) exclude inculpatory evidence.[50]

    1.   <u>Failure to Investigate and Prepare for Trial</u>

"To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." <u>Miller v. Dretke</u>, 420 F.3d 356, 361 (5th Cir. 2005). Petitioner argues that his counsel was ineffective because he failed to interview any of the prosecution's witnesses and thereby obtain information that could have been used to impeach their testimony.

It is undisputed that petitioner's counsel did not interview A.P. or any of the prosecution's witnesses. Moreover, counsel's affidavit suggests that he relied almost exclusively on the evidence he obtained from the prosecutor's file, such as witness statements.[51] While the court acknowledges that counsel obtained an investigator to assist in the investigation and to interview

---

[50]The court summarily denies all other ineffective-assistance-of-trial-counsel claims not specifically addressed in this Memorandum Opinion and Order either because the claims are conclusory, <u>see, e.g.</u>, Petitioner's Memorandum in Support for Writ of Habeas Corpus, Docket Entry No. 2, p. 31; or because petitioner has failed to show that the state court's decision that petitioner did not receive ineffective assistance was unreasonable. <u>See, e.g.</u>, <u>id.</u> at 31-34, 37-41, 42-44.

[51]<u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Affidavit of James D. Jones, pp. 315-16.

witnesses, there is nothing in the record indicating what, if anything, the investigator actually did.  With this limited record the court is skeptical that counsel's failure to interview anyone was effective performance.  With respect to A.P., however, given A.P.'s age, the court accepts as reasonable trial counsel's explanation that in his experience he has never been allowed to interview such a witness. Ex parte Burkett at 316-317.

Moreover, petitioner has failed to establish a reasonable probability that a more competent investigation would have changed the outcome of his trial.  Petitioner does not allege that a more thorough investigation would have led counsel to discover another eyewitness.  Cf. id.; Bryant v. Scott, 28 F.3d 1411, 1418-20 (5th Cir. 1994).  Petitioner merely contends that a more thorough investigation would have yielded impeachment evidence that could have been used to better undermine the credibility of the prosecution's case.  Much of the impeachment evidence that petitioner argues would have been discovered by a more thorough investigation is, at best, inconsequential.[52]

Likewise, even if petitioner's counsel were ineffective in not attempting to interview A.P., petitioner has not shown that he was

---

[52]The court's confidence in the verdict is not undermined, for example, by counsel's failure to discover whether the victim really called her mother after the crime occurred, what time the sun set on the day of the crime, whether officers contacted a witness one or five days after the crime occurred, or whether it was Sandy Steede or her daughter that answered the door for A.P.  See Petitioner's Memorandum in Support for Writ of Habeas Corpus, Docket Entry No. 2, pp. 14-20.

prejudiced.   Petitioner argues that had his counsel interviewed A.P. one of two scenarios would have occurred:   Either counsel would have found out about the additional details of the offense and adjusted his trial strategy accordingly; or A.P. would not have said anything about the additional details, thus providing counsel with a greater opportunity to impeach A.P.'s credibility at trial. This presumes, of course, that petitioner's counsel would have been able to interview A.P., an assumption that is not supported by the record.   Furthermore, even if counsel had interviewed A.P., the court is not persuaded that there is a reasonable probability that the result of petitioner's trial would be different under either outcome.

While petitioner may be correct in asserting that counsel would have adjusted his trial strategy, petitioner has not indicated what that change would have been, or how any such change might have altered the result of the trial.   Furthermore, the court doubts that had counsel known the additional details prior to trial that counsel's strategy would have changed in any material respect since counsel's strategy and theory of the case was that A.P. and the other witnesses had misidentified petitioner.   And although interviewing A.P. before trial could have alerted petitioner's counsel to the additions to A.P.'s testimony, and thus to discrepancies between A.P.'s description of petitioner and petitioner's actual appearance, petitioner's counsel brought out

those points both on cross-examination and in his closing argument.[53] Accordingly, the court concludes that counsel's investigation of petitioner's case was not so defective as to prejudice petitioner at trial.[54]

2. Failure to Move for a Mistrial

Petitioner argues that he received ineffective assistance of counsel when his counsel failed to move for a mistrial after the jury heard prejudicial testimony from Detective Lewis.[55] At trial, when asked by the prosecutor to explain the reasons for the photo array's arrangement, Detective Lewis testified extraneously that he obtained all of the photographs for the photo array from the Sheriff Department's "database." Petitioner's counsel promptly objected, and the objection was sustained with a direction from the trial judge to "rephrase"; however, petitioner's counsel did not

---

[53]See, e.g., Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II pp. 68, 79, 163-65.

[54]Petitioner also argues that counsel's performance was deficient because counsel refused to meet and discuss the case with petitioner. The court is not persuaded by this argument. As part of petitioner's state habeas application, petitioner's counsel filed an affidavit stating that he never refused to meet with and discuss the case with petitioner. Counsel also stated that he met with and corresponded with petitioner several times. Ex parte Burkett, WR-67,366-01, Vol. II, Jones Aff. p. 316 ¶¶ 5-6. The state habeas court accepted these facts as credible and true. See id., Findings of Fact, pp. 426 ¶ 8, 429 ¶¶ 20-22. Therefore, as petitioner has not submitted clear and convincing evidence that would refute those findings, see 28 U.S.C. § 2254(e)(1), the court will deny petitioner's claim on this point.

[55]Petitioner's Memorandum in Support of Writ of Habeas Corpus, Docket Entry No. 2, pp. 27-29.

move for a mistrial.[56]   Petitioner argues that Detective Lewis's reference to the database was an improper comment on petitioner's prior convictions, and that by failing to request a curative instruction and move for a mistrial, petitioner's counsel allowed the jury to consider his prior convictions when deciding the verdict.

As noted above, when determining whether counsel's conduct was deficient, the court must resist hindsight and evaluate counsel's conduct based on what counsel knew at the time, concluding that counsel's performance was deficient only if it "fell below an objective standard of reasonableness." Strickland, 104 S. Ct. at 2065.   Although counsel may have had a basis for moving for a mistrial, petitioner has not shown that based on counsel's perspective at the time of Detective Lewis's testimony, counsel's failure to move for a mistrial was deficient.   Prior to Detective Lewis's testimony, petitioner's counsel had alerted the jury to the fact that A.P. had only recently added significant details to her story, but only after talking to the prosecutor;[57] he pointed out inconsistencies in the testimony of the prosecution's witnesses concerning the identification of petitioner's car;[58] and he highlighted the discrepancies between petitioner's appearance and

---

[56]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II p. 133.

[57]Id. at 66.

[58]Id. at 100.

the witnesses' description of petitioner.[59]   Moreover, Detective Lewis's reference to the Sheriff Department's database was not an obvious reference to petitioner's prior convictions.   There was no testimony or indication of how petitioner's or any other photograph in the photo array found its way into the database; nor was there an indication that petitioner's photograph was pulled from that database.   Given the extent to which counsel had already impeached the prosecution's case, and the ambiguous implications of Detective Lewis's reference to the Sheriff Department's database, counsel could reasonably have decided not to move for a mistrial in hopes of gaining an acquittal.   Therefore, counsel's decision not to request a mistrial at that time was not deficient, and the state habeas court's decision to that effect was not unreasonable.[60]

3.   Failure to Preserve Claim of Prosecutorial Misconduct for Appeal

Petitioner asserts that he received ineffective assistance when his counsel failed to perfect his objections to the prosecutor's improper argument for appeal.   Petitioner argues that by failing to perfect his two sustained objections to the prosecutor's improper bolstering, counsel failed to preserve

---

[59]See, e.g., id. at 79.

[60]Contrary to petitioner's contention, counsel's decision not to request a curative instruction after objecting to Detective Lewis's vague reference to the database was also not deficient since a reasonable attorney may not want to draw further attention to the remark.

-31-

petitioner's claim of prosecutorial misconduct for appellate review; and that but for that failure, the Texas Court of Appeals would have reversed his conviction.[61]  Before addressing this claim, the court notes that the state habeas court misconstrued petitioner's claim.  Rather than deciding whether counsel's failure to preserve the improper bolstering claim for appeal was deficient or prejudicial to petitioner's appeal, the state habeas court decided that counsel's failure to object to the prosecutor's improper argument was neither deficient nor prejudicial to petitioner's trial.[62]  By misconstruing petitioner's claim, the state habeas court failed to decide the issue on the merits.  See Henderson v. Cockrell, 333 F.3d 592, 600-01 (5th Cir. 2003).  Accordingly, the court will decide the issue de novo rather than under the deferential AEDPA standard.  See id. at 601.

After having his two objections sustained, to preserve petitioner's claim for appeal petitioner's counsel was required to perfect his objections by requesting a curative instruction and moving for a mistrial.  Penry v. State, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995).  However, he failed to do so at either point.[63]

_____

[61]See Petitioner's Memorandum in Support of Writ of Habeas Corpus, Docket Entry No. 2, pp. 29-30.

[62]See Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 442 ¶ 143.

[63]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. II pp. 167:23-25, 168:6-7.

It may have been excusable for counsel not to perfect the first objection. The court sustained the objection and admonished the prosecutor to "avoid" his improper argument. But once the prosecutor returned to improperly bolstering A.P.'s credibility in the face of that sustained objection and the court's subsequent directive, counsel had a duty not only to object again, but to request a curative instruction and move for a mistrial. The duty of petitioner's counsel to perfect the objection was high since the improper argument was made on rebuttal, a time when there were but few other available means to shield petitioner from the prejudicial effects of the argument. See Houston, 569 F.2d at 377.

Petitioner's counsel has never asserted any strategic reason for failing to preserve petitioner's claim of improper argument. To the contrary, petitioner's counsel admitted under oath at the hearing for petitioner's motion for a new trial that he had no "viable" or tactical reason for failing to move for a mistrial after he objected to the improper argument. Counsel also conceded that he should have done so irrespective of the jury's verdict.[64] Thus, counsel's failure to perfect the objection cannot be declared strategic or even reasonable. The improper and persistent nature of the prosecutor's argument, coupled with the fact that the argument occurred on rebuttal should have led counsel to not only object, but request a curative instruction and move for a mistrial.

---

[64]Id., Motion for New Trial, pp. 34-35.

Counsel's failure to do so was deficient under <u>Strickland</u>.  <u>Cf.</u> <u>Davis v. Sec'y for Dep't of Corrections</u>, 341 F.3d 1310, 1314 (11th Cir. 2003) (holding that there was "no question" that counsel's performance was deficient after counsel failed to perfect his objection for appeal).

Determining whether petitioner was prejudiced by counsel's failure to preserve error presents a somewhat novel question.  The only reported decision the court has located that addresses the prejudice prong in the context of trial counsel's failure to preserve error for appeal is <u>Henderson</u>.  In that case the Fifth Circuit rejected a claim similar to petitioner's in part because the petitioner had failed to "demonstrate that there was a reasonable probability that, if a motion for mistrial had been made and denied, the Texas Court of Criminal Appeals would have reversed his conviction and sentence on appeal."  333 F.3d at 601-02.

As already noted, to preserve error in this case counsel had to do more than merely move for a mistrial; he was also required to request a curative instruction.  <u>Penry</u>, 903 S.W.2d at 764. Therefore, applying <u>Henderson</u> to this case, to determine whether petitioner was prejudiced by counsel's deficient failure to preserve the claim, the court must determine whether there is a reasonable probability that if a curative instruction had been requested and a mistrial sought and denied, the Texas Court of Appeals would have reversed petitioner's conviction on appeal.

-34-

Accordingly, as this court understands Henderson, the court is required to conduct the same sort of "counter-factual determin[ation] [of] the probable outcome on appeal" that is conducted when resolving claims of ineffective assistance of appellate counsel. United States v. Williamson, 183 F.3d 458, 463 (5th Cir. 1999).

A counter-factual analysis is difficult to apply to petitioner's claim. As stated in Henderson, the court must assume that the trial court would have denied counsel's hypothetical motion for a mistrial; otherwise, there would be no need for appeal. However, it is unclear how far this counter-factual analysis should extend. Since under Henderson the court is required to assume that petitioner's counsel requested a curative instruction, the issue becomes whether the court should further assume that the trial court would have given a curative instruction. The court concludes that it should make such an assumption since the trial court sustained the objections of petitioner's counsel.

Although perhaps somewhat unusual, the court's assumption is reasonable. It would be more anomalous to conclude that after sustaining counsel's objections, the trial court would have refused a further request for a curative instruction. Moreover, the trial court in essence gave a curative instruction when it directed the prosecutor, in the jury's presence, to "avoid this area" and to

"state what [he] heard from the witness stand."[65]   The jury would have reasonably understood the court's admonitions as an instruction that the prosecutor's arguments were not proper and should be ignored and that the jury should consider only the evidence presented in court.

Under this scenario the court concludes that petitioner has failed to establish a reasonable probability that the Texas Court of Appeals would have granted petitioner a new trial but for counsel's failure to preserve the prosecutorial misconduct claim for review.   "When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial." Primes v. State, 154 S.W.3d 813, 815 (Tex. App. 2004).   The resolution of this issue would "depend[] on whether the trial court's instruction to disregard cured the prejudicial effect, if any, of the improper argument." Calton v. State, 132 S.W.3d 29, 36 (Tex. App. 2004).   The Texas Court of Appeals would have presumed that the curative "instruction to disregard [the] impermissible argument cure[d] any prejudicial effect." Primes, 154 S.W.3d at 815.   "Only if the reviewing court determine[d] the instruction was ineffective [would] the court [have gone] on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict." Calton, 132 S.W.3d at 36.

---

[65]Id., Trial on the Merits, Vol. II, p. 168:3, 8-9.

Based on these standards the court cannot say that there is a reasonable probability that the Texas Court of Appeals would have reversed petitioner's conviction in the face of a curative instruction from the trial court.  The evidence against petitioner was substantial, and the improper arguments brief.  Thus, it is likely, and therefore fatal to petitioner's claim, that the Texas Court of Appeals would have concluded that an instruction from the trial court would have cured any prejudice from the prosecutor's improper remarks.  See Henderson, 333 F.3d at 601-602; cf. Primes, 154 S.W.3d at 815.

### 4.   Failure to Strike a Juror

Petitioner argues that he received ineffective assistance after his counsel failed to strike a member of the jury who, during voir dire, indicated that she would want to hear from both sides before deciding on petitioner's guilt.[66] Petitioner argues that counsel's failure to strike this juror constituted ineffective assistance because the juror was prejudiced against petitioner since he did not testify at trial.  However, petitioner has failed to establish that his counsel's conduct was deficient.

Although the juror stated that she would like to hear from both the prosecution and the defense, the context of the juror's statement cannot be ignored.  The juror made the statement after petitioner's counsel engaged in a lengthy and confusing colloquy

---

[66]Reporter's Record, Docket Entry No. 9, Trial on the Merits, Vol. I pp. 53-54.

-37-

with the venire about the implications of petitioner's right against self-incrimination.[67]   The trial judge dispelled this confusion by giving the venire another instruction concerning petitioner's right not to testify, and further admonished them that if they could not follow that instruction they needed to tell the court.   Petitioner's counsel then asked those venire members who still felt like they could not follow the court's instruction to come forward.   Although a few venire members did come forward, the juror that petitioner contends should have been struck was not among them.[68]   Accordingly, counsel's decision not to strike the juror was not deficient since the juror ultimately indicated she would follow the court's instructions.

5.   <u>Failure to Object to the Admission of Inculpatory Evidence</u>

Petitioner argues that his counsel's failure to redact the comments that A.P. and Dusty Steede wrote on their respective photo arrays identifying petitioner as the perpetrator constituted ineffective assistance.   Upon identifying petitioner's photograph as the perpetrator, A.P. circled the picture and wrote, "the man who closley [sic] fits my description is on the second row [sic] the man in the middel [sic]."[69]   On his array, Dusty Steede circled

---

[67]<u>See</u> <u>id.</u> at 52-54.

[68]<u>Id.</u> at 54-56.

[69]<u>Id.</u>, Vol. I, Exhibit 5.

petitioner's picture and wrote "[t]he guy I circled in the photo is the suspect who exposed himself."[70]

As indicated during the pretrial hearing, counsel's reasons for not redacting these statements were plainly strategic.[71] Counsel used A.P.'s written comments to impeach the accuracy of her identification of petitioner. Moreover, Dusty Steede's comments potentially impeached Dusty Steede's credibility and further demonstrated that A.P. had not told anyone about petitioner masturbating since Dusty Steede's array read only that petitioner had "exposed himself."[72] The court finds nothing deficient about this decision since undermining the accuracy of the identification and the credibility of the prosecution's witnesses was central to petitioner's defense.[73]

---

[70]*Id.*, Exhibit 6.

[71]*Id.*, Vol. II p. 30.

[72]*See, e.g.*, *id.* at 162.

[73]After thirty-seven pages of discussion about the ineffectiveness of his trial counsel, petitioner, in his conclusion and without any analysis or citation to authority, tossed in a claim for relief based on "the cumulative effects of trial counsel's unprofessional errors[.]" Petitioner's Memorandum in Support of Writ of Habeas Corpus, Docket Entry No. 2, p. 46. Having found no deficiencies in counsel's conduct, the state habeas court denied petitioner's claim for cumulative error. *Ex parte Burkett*, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 444 ¶ 159. Unlike the state habeas court, the court has found counsel's conduct deficient, but only in one instance. Accordingly, with only one instance of deficient conduct to "cumulate," petitioner cannot show that the state court's denial of petitioner's cumulative error claim was objectively unreasonable.

**B.    Ineffective Assistance of Counsel at the Hearing on the Motion for a New Trial**

Petitioner argues that he is entitled to habeas relief because of the deficient and prejudicial performance of his counsel during petitioner's hearing on the motion for a new trial.  As noted above, before petitioner can obtain relief on this claim, he must establish that the state habeas court's decision that petitioner's counsel was not ineffective was an "unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  However, the Supreme Court of the United States has not addressed the issue of whether there is a right to counsel on a motion for a new trial.  Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003).  Thus, there is no "clearly established federal law" on this issue.   See Reed v. Quarterman, 504 F.3d 465, 486-87 (5th Cir. 2007).  Therefore, since "there is no Supreme Court decision on point to permit the conclusion that the state court decision . . . 'involved an unreasonable application of clearly established Federal law,'" id. at 485, petitioner's claim "must fail."  Id. at 487.

**C.    Ineffective Assistance of Appellate Counsel**

Petitioner's ineffective-assistance-of-appellate-counsel claim is subject to the same Strickland framework as his ineffective-assistance-of-trial-counsel claims.  Busby v. Dretke, 359 F.3d 708, 714 (5th Cir. 2004).  As with his other counsel, petitioner asserts

many instances of ineffective assistance of appellate counsel. However, all such claims are meritless.

Despite petitioner's argument otherwise, and as found by the state habeas court,[74] petitioner's appellate counsel did raise sufficient facts to support petitioner's claim of legal and factual insufficiency of the evidence. Indeed, a review of counsel's brief reveals that appellate counsel raised most of the facts that petitioner contends were not raised.[75]  Therefore, petitioner's claim on this point is denied.

Nor was counsel's performance deficient because he raised issues that were unsuccessful, or because he failed to present on appeal those issues that petitioner contends were "dead-bang winners."[76]  To succeed on a claim that counsel was deficient for failing to raise a particular issue, petitioner must demonstrate more than that counsel failed to present an issue that may or may not have succeeded; petitioner must establish that counsel failed "'to raise a discrete, purely legal issue, where precedent could not have been more pellucid or applicable[.]'"  Schaetzle, 343 F.3d

---

[74]Ex parte Burkett, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, pp. 447-48.

[75]Compare Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus, Docket Entry No. 2, pp. 55-56, with State Court Records, Docket Entry No. 9, Brief of Appellant pp. 14-15, Burkett v. State, 07-03-348-CR.

[76]Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus, Docket Entry No. 2, pp. 57-62.

at 445 (quoting <u>Williamson</u>, 183 F.3d at 463 n.7).   This is a difficult showing because "[s]uch directly controlling precedent is rare," given that "factual differences will make authority easily distinguishable, whether persuasively or not."   <u>Williamson</u>, 183 F.3d at 463 n.7.

Here, petitioner has not cited or analyzed any sufficiently pellucid precedents that would make deficient counsel's decision not to argue petitioner's purported "dead-bang winners." Therefore, petitioner has failed to establish that appellate counsel's performance was deficient.

## V.   Judicial Misconduct

Petitioner raises three claims of "judicial misconduct" all of which are meritless.   Petitioner's first claim, that the trial court coerced him into accepting the prosecution's plea offer for a forty-year sentence, has no factual basis to sustain it.   He has presented no evidence indicating he was coerced, and the state habeas court's uncontroverted factual findings militate against such a finding.[77]

In his second claim petitioner argues that the state court's evidentiary decisions allowing Sandy Steede to testify as the prosecution's "outcry witness," and denying petitioner the

---

[77]<u>See</u> <u>Ex parte Burkett</u>, WR-67,366-01, Vol. II, Findings of Fact and Conclusions of Law, p. 453 ¶¶ 235-37.

opportunity to display his tattoos were incorrect and prejudicial.[78]
However, the claim will be denied because petitioner has failed to
establish that the state trial court's rulings "violate[d] a
specific federal constitutional right or [were] so egregious such
that it render[ed] the petitioner's trial fundamentally unfair."
Brown v. Dretke, 419 F.3d 365, 376 (5th Cir. 2005).[79]

Finally, petitioner is not entitled to relief based on the
trial court's interactions with the jury during deliberations
outside of petitioner's presence.   During deliberations the jury
sent the trial judge three notes:   One requested all of the
evidence submitted during trial; another asked to see the
witnesses' written statements; the third, issued after roughly two

---

[78]There is nothing in the trial record indicating that
petitioner ever requested to show his tattoos, or that the trial
court ever ruled on that request.   However, during petitioner's
motion for a new trial, while cross-examining petitioner's trial
counsel, the prosecutor made reference to a bench conference, and
indicated that the request was made and denied. Reporter's Record,
Docket Entry No. 9, Motion for a New Trial, Vol. I p. 40.   In
response, petitioner's trial counsel admitted that a meeting
occurred, but he could not confirm whether the trial court actually
denied the request.   Id.

[79]In somewhat cryptic fashion, petitioner also claims that he
was denied due process by the court reporter's failure to record
defense counsel's oral motion to have petitioner show his tattoos
in court.   Petitioner's Memorandum in Support of Petition for Writ
of Habeas Corpus, Docket Entry No. 2, pp. 80-83.   Although there is
state law to support such a claim, see, e.g., Smith v. State, 114
S.W.3d 66, 70 (Tex. App. 2003), the court has found no
United States Supreme Court decisions that hold that a court
reporter's failure to record a bench conference violates a
defendant's due process rights under the Fourteenth Amendment.
Accordingly, since there is not clearly established federal law on
this point, the court will deny petitioner's claim.   Reed, 504 F.3d
at 485.

hours of deliberations, announced that the jury was deadlocked.[80]
After receiving the third note the judge directed the jury to
continue deliberating the next morning, and released them for the
day.[81]  Although petitioner was not present in the courtroom when
the trial judge instructed the jury, petitioner's counsel was
present.[82]

Petitioner does not contend that by instructing the jury
outside of his presence the trial court violated a specific
constitutional right such as his Sixth Amendment right to
confrontation.  Instead, petitioner's claim is limited to a general
denial of due process.  The mere fact that the judge met with the
jury outside of petitioner's presence does not entitle petitioner
to relief since "[t]he [petitioner] has no constitutional right to
be present at every interaction between a judge and juror."  Corwin
v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998) (internal quotations
omitted).  Rather, to be entitled to relief, petitioner "must
demonstrate that, based on all the circumstances, the instruction

---

[80]Ex parte Burkett, WR-67,366-01, Vol. I, pp. 121-23.

[81]Reporter's Record, Docket Entry No. 9, Trial on the Merits,
Vol. II pp. 173-74.

[82]Ex parte Burkett, WR-67,366-01, Vol. II, Affidavit of
Assistant District Attorney Robert Bartlett, p. 423 ¶ 20.  There is
no clear indication whether petitioner was present when the court
instructed the jury to retire and continue deliberating the next
morning.  However, petitioner asserts he was not present at the
time, and there are no findings to the contrary from the state
habeas court.  Thus, the court will assume petitioner was not
present at the instruction.

[to continue deliberations] prevented him from receiving a fair and just hearing." Young v. Herring, 938 F.2d 543, 557-58 (5th Cir. 1991).

Petitioner's only argument in support of his claim is that had he been present when the trial judge directed the jury to continue deliberations, he would have asked his counsel to move for a mistrial. The decision to move for a mistrial is a tactical decision that ultimately rests with counsel, not petitioner. See United States v. Burke, 257 F.3d 1321, 1323-24 (11th Cir. 2001); United States v. Washington, 198 F.3d 721, 723 (8th Cir. 1999); cf. Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (holding that counsel's decision to not move for a mistrial did not amount to deficient performance for purposes of an ineffective-assistance-of-counsel claim because the decision was a strategic one for counsel to make). Thus, given that counsel was present when the judge instructed the jury, and made a conscious and informed choice not to move for a mistrial,[83] the court concludes that petitioner has failed to establish that he was denied a fair hearing.

### VI.    Petitioner's Request for Leave to File an Addendum

In his request for leave to file an Addendum, petitioner attempts to place before the court an affidavit filed by his

---

[83]When asked why he did not move for a mistrial after the jury indicated it was deadlocked, petitioner's counsel answered that he was hoping for an acquittal. Reporter's Record, Docket Entry No. 9, Motion for a New Trial, Vol. I p. 28:15-20.

counsel as part of a disciplinary investigation into counsel's representation of petitioner at trial.  While the affidavit itself is acceptable, cf. Morris v. Dretke, 413 F.3d 484, 491 (5th Cir. 2005), the reasons petitioner gives for seeking leave to file the addendum are not.  In essence, nearly seven months after submitting his petition, petitioner moved to amend his petition and add a claim of ineffective assistance of counsel for failure to allow petitioner to remove his shirt in court and display his tattoos to the jury.[84]  This is really a motion to amend and not a mere addendum.  However, the court will not allow petitioner, at this late stage, leave to add this claim.[85]  Therefore, petitioner's motion will be denied.

## VII.   Conclusion and Order

Based on the foregoing, petitioner's request for leave to file Addendum to Petitioner's Reply to Respondent's Motion for Summary Judgment (Docket Entry No. 14) is **DENIED**.   Accordingly, Respondent's Motion to Strike with Brief in Support (Docket Entry No. 15) is **DENIED AS MOOT**.   Respondent's Motion for Summary

---

[84]See Petitioner's Addendum to Petitioner's Reply to Respondent's Motion for Summary Judgment, Docket Entry No. 14, pp. 2-4.

[85]The proposed amendment is futile because the claim is unexhausted since petitioner did not raise the claim in his state habeas application.  It is also cumulative since petitioner's mother testified at trial about the quantity and location of petitioner's tattoos.

Judgment (Docket Entry No. 10) is **GRANTED**, however, and petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

     **SIGNED** at Houston, Texas, on this 24th day of January, 2008.

_____
            SIM LAKE
UNITED STATES DISTRICT JUDGE